Barbara Jean WILLIAMS and Jimmie L. Williams, Plaintiffs,

v.

JOHNSON & JOHNSON, a foreign corporation, and Ortho Pharmaceutical Corporation, Defendants.

No. 66 Civ. 3650.

United States District Court, S. D. New York.

April 6, 1970.

**32**

Speiser, Shumate, Geoghan, Krause & Rheingold, by Paul D. Rheingold, New York City, for plaintiffs.

Royall, Koegel & Wells, by David F. Dobbins, New York City, for defendants.

## OPINION

TYLER, District Judge.

Defendants move for a protective order under Rules 30(b) and 31(d), Fed.R.Civ. P., forbidding plaintiffs or their attorneys from divulging any of the material obtained from defendants through the discovery processes of this court to any persons or firms not directly connected with the preparation of this action for trial.

The exact theories on which defendants seek this relief are not explicitly spelled out but, generally speaking, defendants and their counsel appear to press three contentions. First, defendants suggest that the fruits of discovery in one action should be used in that action only and should not be communicated to any party not directly involved in the action. Sec-

ond, defendants apparently fear that plaintiffs' attorneys will use the fruits of discovery in this case to stir up further litigation involving the d e f e n d a n t s. Third, it is said that plaintiffs or their attorneys have used the fruits of discovery to try the case in the press rather than in the court room.

The basis of these fears and allegations becomes more clearly explicable when one considers the nature of the suit. Johnson & Johnson manufactured, and perhaps still does manufacture, an oral contraceptive called Ortho-Novum. Plaintiffs allege that the taking of those contraceptives by Barbara Jean Williams caused her to suffer a stroke with resultant injury to her for which plaintiffs seek to recover damages from defendant. Apparently, a number of similar suits have been filed against this defendant and other manufacturers of similar "pills."

In this situation, it is at least theoretically advantageous to the attorneys for plaintiffs in the various suits to share the fruits of discovery. They thus reduce the time and money which must be expended to prepare for trial and are probably able to provide more effective, speedy and efficient representation to their clients. *See* Rheingold, The MER/29 Story—An Instance of Successful Mass Disaster Litigation, 56 Cal.L. Rev. 116 (1968). If this approach leads to the consolidation of cases, it will save judicial time and effort as well. On its face, such collaboration comes squarely within the aims laid out in the first and fundamental rule of the Federal Rules of Civil Procedure: "These rules * * * shall be construed to secure the just, speedy and inexpensive determination of every action." Rule 1, Fed.R.Civ.P. Thus, there is no merit to the all-encompassing contention that the fruits of discovery in one case are to be used in that case only.

Defendants go beyond that general contention and raise the spectre of misuse of the fruits of discovery

which, if proven, might well result in the issuing of a protective order. First, defendants touch on the possibility that litigation will be stirred up or, worse, promoted. It is difficult to draw a clear line between the legitimate educative activities of an attorney and the drumming up of business from those who might otherwise settle their disputes without the entanglements of litigation. A.B.A., Code of Professional Responsibility, Canon 2. It is impossible to draw that line sharply and distinctly when virtually no facts are presented to the court. The only specific allegation defendants make in this respect is that plaintiffs' attorneys may sell or may have sold the fruits of the discovery in this case with other materials and information to attorneys engaged in similar cases.[1] Without more, the charging of fees between attorneys collaborating in similar cases and the collaboration itself both seem reasonable on their face. There is simply no evidence here that plaintiffs' attorneys are stirring up litigation. This court will not issue a protective order when it appears that there is nothing from which to legitimately protect the movants.

Finally, defendants allege that plaintiffs or their attorneys are engaged in improper publicizing of this case which should be prohibited. This allegation is based on the publication last year of a book by one Barbara Seaman entitled *The Doctors' Case Against the Pill*. The book contains excerpts from a pre-trial deposition of the plaintiff in which the names of all parties have been changed.

The conclusions which the author implicitly draws from the testimony are not favorable to the defendants. Not surprisingly, then, defendants' counsel, having averred that neither defendants, their agents nor attorneys divulged the material to the author, jumps to the conclusion that the material came from plaintiffs' attorneys and that such conduct is prejudicial to defendants. Hence a protective order is sought.

It is not clear from this state of the record that plaintiffs' attorneys presented this material to the author either *sua sponte* or at her request. Moreover, by simple docketing in the court, this deposition would become public material open to the research of a writer investigating the possible effects of birth control pills. Therefore, in this indistinct and undeveloped state of the facts, I am unwilling to issue a protective order against plaintiffs' attorneys. I assume that they are well aware of Canon 7 of the American Bar Association's Code of Professional Responsibility and that they well know the dangers to the judicial process that may result from improper publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) and cases discussed therein. In the light of the several applications of this sort heretofore made in this case, I am certain that defense counsel will not hesitate to move for an appropriate order if at some future date they can demonstrate that plaintiffs or their counsel are engaged in improper publicity.

Motion denied.

---

1. In fact, defendants' counsel raised this point not in his papers but at oral argument—and then only in response to the suggestion of plaintiffs' counsel that such a possibility was the worst imaginable under the circumstances.