Kathy FARNUM, Joe Farnum, and Kathy and Joe Farnum, as Next Friends and Natural Parents of Joe Jr., Cory and Michael Farnum, Appellees,

v.

G.D. SEARLE & CO., a Corporation, Appellant,

and

Dr. Robert C. Smith, Dr. Raymond Fitzsimmons, and Dr. John Kunciates, Defendants.

No. 68882.

Supreme Court of Iowa.

Oct. 19, 1983.

Rehearing Denied Nov. 16, 1983.

Richard W. Lozier, Jr. of Grant, Lozier & Sarcone, Des Moines, and William P. Richmond of Sidley & Austin, Chicago, Ill., for appellant.

Fredd J. Haas of Humphrey & Haas, Des Moines, for appellees.

**McCORMICK, Justice.**

The trial court refused to enter a protective order to prevent plaintiffs and their attorneys from disclosing to anyone else or from using in any other case all copies of documents or information acquired by them during discovery of defendant G.D. Searle & Co.'s previously private and unpublished records. We granted interlocutory review of the trial court's ruling. Because we do not find an abuse of the court's discretion, we affirm.

Plaintiffs Kathy and Joe Farnum and their children Joe Jr., Cory, and Michael brought this action against Searle on a theory of products liability, seeking damages for injuries allegedly caused to Kathy Farnum from taking Searle's birth control pill Ovulen 28. They separately sought damages from defendant doctors Smith, Fitzsimmons and Kunciates for alleged negligence in prescribing the pill. We have de-cided an unrelated issue in this case in a separate opinion filed today. *See Farnum v. G.D. Searle & Co., Inc.,* 339 N.W.2d 392 (Iowa 1983).

When they filed their petition, plaintiffs also addressed interrogatories and requests for production of documents to Searle. Included in the interrogatories were questions about animal tests, human tests, and reported consequences of using Ovulen 28. In responding to the interrogatories, Searle alleged that much of the information sought by plaintiffs was contained in its New Drug Application (NDA) for Ovulen 28. Searle said its only copy of the NDA was kept secure at its Skokie, Illinois, headquarters, where it was required at all times to be available for Food and Drug Administration inspection. Searle offered to let plaintiffs' counsel inspect relevant portions of the NDA at its Skokie office if counsel would agree not to disclose any of its contents to persons not associated with the litigation. When plaintiffs' counsel rejected this proposal, Searle filed a motion for protective order.

The motion was as follows:

NOW COMES defendant G.D. SEARLE & CO., and moves for an order restraining plaintiffs, their attorneys of record, or attorneys and individuals associated with them in the preparation or trial of this cause, from disclosing to any attorney or individual documents or information, or copies of such documents, which they have obtained or may in the future obtain from documents or information supplied for this suit by G.D. SEARLE & CO., under the discovery procedures of this Court on the ground that the discovery involves the New Drug Application for Searle's product Ovulen, which is filled with trade secrets and confidential information, obtained at great expense and consumption of time by defendant.

The Ovulen New Drug Application contains the following confidential information relating to Searle's facilities, methods, and know-how for the production and distribution of Ovulen: (1) the arti-

cles used as components of the drug; (2) the composition of the drug; (3) a full description of the methods and formulae used in, and the facilities and controls used for, the manufacture and packaging of the drug, including a description of Searle's buildings, equipment, and personnel; (4) the methods used in synthesis, extraction, isolation and purification of the new drug substance; (5) the instructions for manufacturing, packaging, and labeling each dosage form of the drug; (6) a description of the test methods employed for the container and for the other parts of the drug package; (7) precautions and tests for rejecting improper production; (8) stability studies showing the conditions under which the drug may be stored and used; and (9) much other information showing the complete internal workings of Searle's manufacturing process for Ovulen. Reports are also sought by the Interrogatories and Requests for Production; and they, too, contain valuable trade secrets, including: (1) non-published reports of clinical experience, studies, investigations, and tests of the drug on humans; (2) similar reports relating to animals; (3) studies involving the chemical or physical properties of the drug; (4) information relating to the quantities distributed; and (5) information describing coincidental illness during use of the drug.

The motion was accompanied by the following affidavit:

BAHIA D. MITCHELL, PH.D., being first duly sworn, states as follows:

1. She is an agent of G.D. SEARLE & CO., a corporation, authorized to make this Affidavit on its behalf, and is familiar with the files and records of G.D. SEARLE & CO.

2. The New Drug Application, supplements, quarterly and semi-annual reports to the Food and Drug Administration with regard to Ovulen contain trade secrets which are submitted to the Food and Drug Administration under its obligation to hold such submissions in confidence. They contain trade secrets relating to further uses for Ovulen, which uses are under present investigation and which must remain secret for purposes of avoiding injury to the competitive position of G.D. SEARLE & CO. in the pharmaceutical industry. The submissions to the Food and Drug Administration also contain tentative observations which the person investigating the drug, who is independent of the control of G.D. SEARLE & CO., does not permit G.D. SEARLE & CO. or the Food and Drug Administration to make public. Further, such submissions contain trade secrets and manufacturing art relating to the techniques and inert materials used in the fabrication of Ovulen pills, which information must remain secret to avoid injury to the competitive position of G.D. SEARLE & CO. in the pharmaceutical industry.

3. The information called for in interrogatories and requests for production served by plaintiffs' attorneys is contained in the New Drug Application, supplements, quarterly and semi-annual reports submitted to the Food and Drug Administration in connection with Ovulen with the exception of information received since the last report to that agency.

The New Drug Application for Ovulen, along with its supplements, is bulky and voluminous, weighs approximately 120 pounds and, if piled, is a stack of printed, typed and handwritten material approximately 10 feet in height, containing many thousands of pages.

There is only one complete copy of the new drug applications, supplements, quarterly and semi-annual reports, which is confidential, highly guarded and kept under lock and key. It is essential for the proper daily operation of G.D. SEARLE & CO. that the New Drug Application be kept at its offices. They must also be available at all times for examination by the FDA, which can occur at any time. Sending this material out of the Company premises would involve great risk of loss or damage to the documents, which could not be replaced,

and under no circumstances may be outside the possession of an authorized Searle employee. If such documents fall into the hands of competitors, great damage would result to the business position of G.D. SEARLE & CO. in its industry. The information in such documents covers a period of time in excess of 14 years and involves persons in many different parts of the world.

Searle requested entry of the following protective order:

On motion of defendant G.D. SEARLE & CO. for an order restraining plaintiffs and their attorneys from disclosing photocopies or copies or any information they have obtained or may in the future obtain from documents or information supplied for this suit by G.D. SEARLE & CO., and proof being made to the satisfaction of the Court, the Court being fully advised in the premises, IT IS ORDERED THAT:

Plaintiffs and their attorneys of record, and attorneys or individuals associated with them in the preparation or trial of this cause are restrained from disclosing the product of the past, present or future discovery of those records, documents and information obtained from defendant G.D. SEARLE & CO. by reason of the formal discovery of such records, documents and information as may take place from time to time in the prosecution of this action.

Disclosure to any attorney or individual who does not have a legitimate interest in the prosecution of the above-entitled cause is prohibited and restrained by this order. Further, plaintiffs and their attorneys of record, themselves, or attorneys or individuals associated with them in the preparation or trial of this cause, are restrained from using the said records and documents in the prosecution of cases other than the above-entitled case.

The records which are the subject of this protective order are the records and documents of defendant G.D. SEARLE & CO., referred to above and which are not a matter of public record or otherwise generally available to the public, and have not been published in books, journals, advertising media and the like, and have not been previously published, advertised or generally shown to physicians and druggists for the purpose of promotion or sale of the drug Ovulen.

Plaintiffs resisted the motion on the ground of an absence of sufficient "particular and specific facts" to establish good cause and because of its alleged conflict with the purpose of the rules of civil procedure "to secure the just, speedy, and inexpensive determination of every action." See Iowa R.Civ.P. 67. In oral argument plaintiffs' counsel stated:

If they had come in and said: "Here's the things that we think are trade processes, that are trade secrets, that's confidential information, and we want an order prohibiting you from disseminating that" I would have openly agreed to it, but when somebody comes in and says: "We want to keep you from disseminating everything that's in this room" and doesn't tell me what's in the room, we think that's clearly beyond the bounds of a Motion for Protective Order and that in this case the defendants have failed to show good cause of why their Motion for Protective Order should be granted.

Searle's counsel responded by arguing that its NDA contained trade secrets and confidential information and that any discovery of its contents should be limited to use in the present litigation. Counsel expressed concern about possible trafficking of discovered information among attorneys for use in other litigation.

The trial court denied the motion for protective order because of an asserted failure of Searle to meet its burden of proof and because Searle's desire to prohibit use of the information in other cases was contrary to the purpose of the rules of civil procedure.

▮▮▮ Iowa Rule of Civil Procedure 123 provides in relevant part:

Upon motion by a party ..., and for good cause shown, the court ... may make any order which justice requires to protect a party ... from annoyance, em-

barrassment, oppression, or undue burden or expense, including one or more of the following:

. . . .

(g) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;

. . . .

This court has noted that our discovery rules are to be liberally construed to effectuate the disclosure of relevant information to the parties. The trial court has wide discretion in its rulings on discovery issues and will be reversed only when an abuse of discretion is found. *Pollock v. Deere and Co.,* 282 N.W.2d 735, 738 (Iowa 1979).

These principles are exemplified in cases interpreting rule 123. *See Farley v. Seiser,* 316 N.W.2d 857, 858 (Iowa 1982) (rule 123 protective order is not appropriate to limit admissibility of evidence, only its discovery or its effect); *Iowa Civil Rights Commission v. City of Des Moines,* 313 N.W.2d 491, 496–97 (Iowa 1981) (no trial court abuse of discretion in permitting persons to urge physician-patient privilege in objecting to disclosure of their medical records); *Pollock,* 282 N.W.2d at 739 (expense of discovery not so great as to justify foreclosing it altogether); *Winegard v. Oxberger,* 258 N.W.2d 847, 852–53 (Iowa 1977), *cert. denied,* 436 U.S. 905, 98 S.Ct. 2234, 56 L.Ed.2d 402 (1978) (first amendment concerns did not require quashing of subpoenas). This court, however, has not previously interpreted rule 123(g). Federal cases interpreting its counterpart in Federal Rule of Civil Procedure 26(c) therefore provide helpful guidance in the present case.

■ It is first necessary to determine what constitutes a trade secret or confidential information within the meaning of the rule. A useful definition is provided in comment b to Restatement of Torts § 757 (1939), which defines a trade secret as "information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *See United States v. International Business Machines Corp.,* 67

F.R.D. 40, 46–47 (S.D.N.Y.1975). This definition is consistent with the discussion of the concept in *Roberts v. DeKalb Agricultural Association, Inc.,* 259 Iowa 131, 139–40, 143 N.W.2d 338, 343 (1966), where this court recognized that the discovery issue ordinarily cannot "receive intelligent treatment without some evidence extrinsic to the pleadings and questions themselves." *Id.* at 139, 143 N.W.2d at 343.

■ Factors to be considered in determining whether information is a trade secret or confidential include:

(1) the extent to which the information is known outside of [the party's] business; (2) the extent to which it is known by [those] involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Restatement of Torts § 757 (1939) comment b.

■ By its terms rule 123 authorizes a protective order when good cause is shown for finding that disclosure of a trade secret or other confidential information should be prevented or restricted to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Federal courts uniformly insist "on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause." 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, at 265 (1970). *See, e.g., General Dynamics Corp. v. Selb Manufacturing Co.,* 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974).

In evaluating the factual showing, a trial court should employ three criteria:

[T]he harm posed by dissemination must be substantial and serious; the restraining order must be narrowly drawn and

precise; and there must be no alternative means of protecting the public interest which intrudes less directly on expression. *In re Halkin,* 598 F.2d 176, 191 (D.C.Cir. 1979). These criteria strike a balance between the policy favoring discovery and free expression on one side and a party's interest in avoiding commercial damage and preventing an abuse of discovery on the other.

If disclosure is otherwise warranted, however, it should not be precluded merely because of a party's desire to keep adverse information from reaching the public or to bar the information from being used in other cases. *See Waelde v. Merck, Sharp & Dohme,* 94 F.R.D. 27, 28 (E.D.Mich. 1981); *Patterson v. Ford Motor Co.,* 85 F.R.D. 152, 154 (W.D.Tex.1980); *In re Upjohn Antibiotic Cleocin Products Liability Litigation,* 81 F.R.D. 482, 484 (E.D.Mich. 1979), aff'd, 664 F.2d 114 (6th Cir.1981); *Johnson Foils, Inc. v. Huyck Corp.,* 61 F.R.D. 405, 410 (N.D.N.Y.1973); *Williams v. Johnson & Johnson,* 50 F.R.D. 31, 32 (S.D.N.Y.1970). These cases leave the issue of any potential impropriety in dissemination of discovered information to appropriate attorney disciplinary proceedings. Dissemination is not wrong in itself:

> There is nothing inherently culpable about sharing information obtained through discovery. The availability of the discovery information may reduce time and money which must be expended in similar proceedings, and may allow for effective, speedy, and efficient representation. [citation omitted] Unless it can be shown that the discovering party is exploiting the instant litigation solely to assist litigation in a foreign forum, federal courts allow full use of the information in other forums.

*Patterson,* 85 F.R.D. at 154.

The federal case most nearly analogous to the present case is *Waelde v. Merck, Sharp & Dohme.* In that case as in this one the defendant sought to preclude disclosure of all information in the NDA file. As in this case the motion consisted of conclusory allegations of confidentiality and competitive harm. The court held that the movant failed to offer sufficient particulars for the court to determine what information in the NDA was confidential and how its disclosure would cause harm. The court reasoned:

> All the information in an applicant's NDA file is not automatically available to the public after a drug application has been approved. Trade secrets and confidential information in possession of the FDA, whether contained in NDA files or otherwise, are not available for public disclosure. [citation omitted] However, all the information contained in an NDA file is not necessarily a trade secret or confidential commercial information. Moreover, certain categories of information may be disclosed after a drug application has been approved or if the information has previously been disclosed to the public. [citation omitted] For example, adverse reaction reports and consumer complaints may be disclosed after a drug application is approved. Safety and effectiveness data, which includes "all studies and tests on a drug on animal and human subjects and all studies and tests of the drug for identity, stability, purity, potency, and bioavailability," may be released if previously publicly disclosed or if certain other conditions are met. However, manufacturing methods and production data may be disclosed only if not a trade secret or confidential information and the information has been previously disclosed.

Therefore, to be completely exempt from disclosure by the FDA, the contents of an NDA file must be a trade secret or confidential information as well as not previously publicly disclosed. Defendant's assertion that information in its NDA file is treated as a trade secret by the FDA begs the question, since the requirements of confidential treatment of information by the FDA are virtually the same as those established in case law to support granting a protective order pursuant to Fed.R.Civ.P. 26(c)(7). Therefore, to obtain a protective order to protect the information in the NDA file sought by

plaintiff, defendant still must make a particularized showing that the information it seeks to protect is a trade secret or confidential information.

94 F.R.D. at 29.

In the present case, Searle did not state facts as opposed to conclusions from which the court could identify what information in the NDA file constituted trade secrets or confidential information. Specifically, the requested information concerning animal tests, human tests, and reported effects from use of the pill was not shown to be in the protected category. Moreover, the alleged competitive harm that might occur from disclosure of the data was not particularized. We find, therefore, that Searle has not established an abuse of discretion in the trial court's refusal to enter a protective order.

We add two final points, however. One is that we commend the parties' efforts to cooperate in discovery on an informal basis. Efforts of this kind assist greatly in saving judicial time and in minimizing the expense to litigants that is otherwise inevitable in complex litigation. We encourage these parties and others in similar situations to strive to work out their differences informally when possible. Secondly, we do not foreclose Searle's right to file a renewed motion for protective order subject to the standards delineated in this case, including the scope of trial court discretion.

AFFIRMED.

All justices concur except CARTER, HARRIS, McGIVERIN, and SCHULTZ, JJ., who dissent.

CARTER, Justice (dissenting).

I dissent. The defendant, G.D. Searle & Co. is not asking the court to deny the plaintiffs access to information which the latter wish to obtain by way of litigation discovery. Defendant only requests that the court grant protection against other uses of the information by plaintiffs which go beyond the purposes for which they seek the information.

Speaking with commendable candor during oral argument before this court, plaintiffs' counsel stated that unless restrained he intended to disseminate the material garnered from the present discovery effort among the members of a group which he identified as "the plaintiffs' bar." The documents in question have been identified as not being public records. They are the private papers of the defendant Searle. That defendant is not obliged to show them to anyone in the absence of a specific legal entitlement on the part of the person or persons seeking to view them. Plaintiffs' counsel has shown no entitlement to view the documents except as a representative of the plaintiffs. Plaintiffs only source of entitlement for viewing the documents is by reason of their assertion that the documents are material to the issues in the pending civil litigation. Given these circumstances, I submit that fairness to defendant Searle suggests that plaintiffs' use of the information obtained should be limited to those purposes upon which their right of access is based.

The position which the court takes fails to adequately distinguish between the right to obtain information in the discovery process and the right to use it for purposes unrelated to the litigation. It seeks to turn the issue on some intangible public interest which is not identified. Quoting from *In re Halkin,* 598 F.2d at 191, it states "there must be no alternative means of protecting the public interest which intrudes less directly on expression." I fail to see where any public interest in expression is involved. What is involved is two competing private interests, both of which would have been fairly accommodated if the protective order which was sought had been granted.

It is ironic that the majority concludes the opinion by encouraging "efforts to cooperate in discovery on an informal basis." The standards adopted in the opinion for the granting of a protective order destroy any incentive for such cooperation. I would reverse the trial court's order and remand the case for the entry of a protective order

in the form which defendant Searle requests.

HARRIS, McGIVERIN and SCHULTZ, JJ., join this dissent.