Dennis WAUCHOP, et al., Plaintiffs,

v.

DOMINO'S PIZZA, INC.,
et al., Defendants.

No. S90–496 (RLM).

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 6, 1991.

Robert J. Pavich, Chicago, Ill., for plaintiffs.

C. Roy Peterson, Chicago, Ill., Thomas J. Brunner, Paul J. Peralta, Arthur A. May, South Bend, Ind., Terri Springman, John P. McQuillan, Merrillville, Ind., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Domino's Pizza, Inc., a defendant in this personal injury suit, seeks a protective order to prevent the plaintiffs from disseminating to others information acquired by discovery in this case. The plaintiffs frankly acknowledge their intent to share the information with others. The parties also dispute the propriety of disclosure of certain information under any circumstances.

This case is one of what apparently are several lawsuits involving the thirty-minute delivery guarantee of Domino's Pizza; the plaintiff's decedent was killed in a collision with a driver for a Domino's franchisee.

The plaintiffs submitted twenty-two interrogatories and forty requests for production of documents on Domino's, and three interrogatories and three requests for production on Domino's president, Thomas Monaghan. The defendants responded to some requests, offered to produce information in response to others pursuant to a unilateral protective order, and simply objected to the remainder. The plaintiffs, with no attempt even to identify the requests to which its motion related (apparently without noticing that some requests drew responses), moved to compel. Domino's and Mr. Monaghan responded in broad strokes, moved to strike various attachments to the plaintiffs' motion, and requested a protective order in even broader strokes. The parties' arguments and attachments suggest that this court is but the most recent to be treated to these arguments.

The plaintiffs claim their discovery requests pertain to four issues:

(1) whether the Domino's driver (Christopher Braden) was the agent or servant of Domino's at the time of the collision;

(2) whether Domino's 30–minute delivery guarantee policy was promulgated and maintained despite the defendants' knowledge that it repeatedly caused highway deaths and serious injuries;

(3) whether Mr. Monaghan was and is individually responsible for promulgating and maintaining the 30–minute guarantee through his control of Domino's; and

(4) whether the 30–minute guarantee was a proximate cause of the collision.

In light of the broad scope of discovery presently allowed by Fed.R.Civ.P. 26, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), and by the courts' reluctance to date to impose a protective order unless the party seeking it shows good cause, *Harris v. Amoco Production Co.*, 768 F.2d 669, 684 (5th Cir.1985), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986); *In re E.E.O.C.*, 709 F.2d 392, 401 (5th Cir.1983), Domino's bears the burden to show that it is entitled to a protective order and that the plaintiffs should not be allowed the discovery.

Generally, any relevant matter is discoverable unless it is privileged. The party opposing discovery has the burden of showing that interrogatories are overly burdensome ... or that the requested discovery is not relevant.

According to the Supreme Court, Rule 26(b)(1) is to be construed broadly and encompasses any matter that bears on,

or that reasonably could lead to other matters that would bear on, any issue that is or may be in the case.... A request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the subject matter of the action....

*Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.*, 132 F.R.D. 204, 212 (N.D.Ind.1990) (citations omitted). To meet its burden, the party objecting to discovery must "specifically detail the reasons why each [request] is irrelevant—whether it be by a simple affidavit or some other evidence which supports its objection." *Schaap v. Executive Industries, Inc.*, 130 F.R.D. 384, 387 (N.D.Ill.1990). Objections that interrogatories are "overly broad, burdensome, oppressive and irrelevant" are too general to warrant a protective order. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir.1990); *Josephs v. Harris Corp.*, 677 F.2d 985, 991–992 (3rd Cir.1982).

Under the present civil rules, if there is any possibility that the discovery sought may lead to information relevant to the subject matter of the litigation, then the discovery should generally be provided. *Schaap v. Executive Industries, Inc.*, 130 F.R.D. at 387; *Bowman v. Consolidated Rail Corp.*, 110 F.R.D. 525, 527 (N.D.Ind. 1986).

## I. RULE 26(c) PROTECTIVE ORDER

The Domino's defendants seek a protective order precluding the plaintiffs from disclosing any discovery material designated as confidential by the Domino's defendants. They also move to strike several documents and portions of documents submitted by the plaintiffs with respect to this motion.

### A. Procedural Issues

The plaintiffs submitted affidavits of two consulting experts, both of whom state that they need the information sought in order to render their opinions as to the cause of the accident. These affidavits were originally sent to Domino's counsel in an attempt to resolve this discovery dispute

and were attached as Exhibits F and G to the motion to compel. Domino's claims these affidavits should be stricken along with paragraph 6 of the motion to compel because they refer to other litigation involving delivery drivers and because the information in previous litigation was subject to protective orders. Further, Domino's asserts that the court, and not the expert affiants, must determine relevancy of information sought. The plaintiffs agree, but state that the experts are allowed to render their opinions. The experts' affidavits are not legal opinions addressing the relevancy of the information; they simply show the need for this information. Domino's argues also that the affidavits are based on materials subject to a protective order, but the experts do not disclose those materials, and Domino's has not convinced the court that there is anything improper about using knowledge of (but not disclosing) protected information to seek the protected information from the party that initially disclosed it. That the information once was sealed does not affect its discoverability in this case. *See Carter–Wallace, Inc. v. Hartz Mountain Industries, Inc.*, 92 F.R.D. 67, 69 (S.D.N.Y.1981) ("None of the cases or principles cited by Hartz support the absurd tenet that a party can avoid discovery in one case merely because it disclosed the same material to an adversary bound by a protective order in another case.").

Paragraph 6 of the motion to compel refers to recent litigation and suggests that Domino's repeatedly evades legitimate discovery. Domino's moves to strike this paragraph, asserting that it is misleading. Previous litigation may be relevant to Mr. Monaghan's culpability in maintaining the 30–minute policy, but previous discovery disputes in those cases are not relevant to this discovery dispute.

Exhibits I–L to the motion to compel are discovery-related motions filed in previous litigation against Domino's. These exhibits should be treated in the same way as paragraph 6 of the motion to compel. Domino's states that the plaintiffs are misleading the court by attaching only plaintiffs' motions

from other cases. In fact, in some discovery disputes, Domino's prevailed. Domino's' Exhibits B and C show the outcome of one of the discovery disputes in its favor.

Paragraph 6 and Exhibits I–L to the motion to compel are an attempt to show Domino's bad faith in objecting to legitimate discovery. These items should be stricken, as they have no bearing on this discovery dispute.

### B. Merits of the Protective Order Motion

The Federal Rules of Civil Procedure do not speak directly to the parties' principal point of contention with respect to the protective order. Rule 26(c) empowers district courts to make any protective order "which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Other courts have considered the issue in reported opinions, however, to which this court may turn for guidance.

In *Seattle Times v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), the Court held that such protective orders may include prohibitions against dissemination in appropriate circumstances without offending the First Amendment. The Court's focus was such that the opinion lends little guidance as to when it is appropriate to do so. The Court concluded, however, that the first amendment is not offended by a protective order entered on a showing of good cause, limited to the context of pretrial discovery, and not extending to information gained from other sources. Whether a non-dissemination protective order implicates the first amendment in any respect is a matter of continuing debate in the wake of *Seattle Times*. Compare, e.g., *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1119 (3rd Cir. 1986), with *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir.1986). Here, however, the plaintiffs note the impact the protective order would have upon their First Amendment rights, but do not appear to contend that the First Amendment precludes the entry of such an order.

The case law does not support Domino's position on the protective order. Although non-parties have no right of access to information produced by the pretrial discovery process, *McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 91 (11th Cir.1989), a litigant generally may make whatever use it wishes of information obtained through discovery. *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir.1988), cert. denied, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *American Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978) ("as a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings."), cert. denied, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979); *John Does I–VI v. Yogi*, 110 F.R.D. 629, 632 (D.D.C.1986). Accordingly, once a showing of discoverability has been made by the party seeking discovery, the party seeking a protective order bears the burden of demonstrating good cause for the entry of a protective order with a non-dissemination provision. If this burden is met, the presumption of free use vanishes, and the party seeking discovery must demonstrate why the court should not exercise its discretion to order non-dissemination or otherwise restrict discovery. *Harris v. Amoco Production Co.*, 768 F.2d 669, 683–684 (5th Cir.1985), cert. denied, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986).

Domino's has not done this. Domino's indicates its general concerns about the harm of public disclosure and others' use of discovery information in present or threatened litigation against Domino's. The plaintiffs' submission indicates that Domino's concern that the plaintiffs will disclose discovery information to others is well-founded; the plaintiffs frankly concede that intent. The general risk of public disclosure or collaborative sharing of information, however, does not constitute good cause for a protective order under Rule 26(c).

■ Good cause may be shown more easily by a non-party than by a party, *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985); *Avirgan v. Hull,* 118 F.R.D. 252, 255 (D.D.C.1987) (deponent's motion: "Although Robinette's concerns are more weighty because he is not a party to the underlying action . . ."), but Domino's raises no issue on behalf of a non-party. A showing that a discovery request seeks trade secrets constitutes an adequate demonstration of good cause for a protective order under Rule 26(c). *See, e.g., Ball Memorial Hospital, Inc. v. Mutual Hospital Ins., Inc.,* 784 F.2d 1325, 1346 (7th Cir.1986). Similarly, good cause exists if a specific risk to the court's ability to select an impartial jury is shown. *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 8 (1st Cir.1986). Domino's, however, makes no such general allegation.

■ A claim, such as that made by Domino's, that public disclosure would be harmful to the defendant's reputation, is not sufficient. *Ericson v. Ford Motor Co.,* 107 F.R.D. 92 (E.D.Ark.1986) (rejecting request for non-dissemination order concerning all consumer complaints against defendant for "park to reverse" occurrences). Instead, the defendant must specifically identify the potentially embarrassing information, *Avirgan v. Hull,* 118 F.R.D. 252; *Koster v. Chase Manhattan Bank,* 93 F.R.D. 471 (S.D.N.Y.1982), and clearly define the serious harm likely to result from public disclosure. *Cipollone v. Liggett Group, Inc.,* 113 F.R.D. 86, 89 (D.N.J.1986), *aff'd,* 822 F.2d 335, 345–346 (3rd Cir.1987); *Parson v. General Motors Corp.,* 85 F.R.D. 724, 726 (N.D.Ga.1980).

In *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3rd Cir.1986), the Third Circuit acknowledged the difficulty faced by a corporate party seeking to foreclose dissemination on grounds of embarrassment:

> [B]ecause release of information not intended by the writer to be for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious. As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground. . . . to succeed, a business will have to show with some specificity that the embarrassment resulting from dissemination of the information would cause a significant harm to its competitive and financial position.

Domino's has made no such showing.

■ The risk—or in this case, the certainty—that the party receiving the discovery will share it with others does not alone constitute good cause for a protective order. Rule 1 of the Federal Rules of Civil Procedure requires that the Rules be construed so as to foster the just, speedy, and inexpensive determination of every civil action. Collaborative use of discovery material fosters that purpose; the sharing of discovery materials ultimately may further the goals of Rule 1 by eliminating the time and expense involved in "re-discovery". *See Williams v. Johnson & Johnson,* 50 F.R.D. 31, 32 (S.D.N.Y.1970). The efficient administration of justice should encourage such practices. *Ward v. Ford Motor Co.,* 93 F.R.D. 579, 580 (D.Colo.1982) ("Each plaintiff should not have to undertake to discovery [sic] anew the basic evidence that other plaintiffs have uncovered. To so require would be tantamount to holding that each litigant who wishes to ride a taxi to court must undertake the expense of inventing the wheel."); *accord, Baker v. Liggett Group, Inc.,* 132 F.R.D. 123, 126 (D.Mass.1990) ("[T]o routinely require every plaintiff . . . to go through a comparable, prolonged and expensive discovery process would be inappropriate."); *Patterson v. Ford Motor Co.,* 85 F.R.D. 152, 154 (W.D.Tex.1980) ("The availability of the discovery information may reduce time and money which must be expended in similar proceedings, and may allow for effective, speedy, and efficient representation."). Maintaining a suitably high cost of litigation for future adversaries is not a proper

purpose under Rules 1 or 26. *Cipollone v. Liggett Group, Inc.,* 113 F.R.D. at 87.

As Judge Wisdom wrote in *Wilk v. American Medical Ass'n,* 635 F.2d 1295, 1301 (7th Cir.1980): "A *bona fide* litigant is entitled to his day in court. That the expense of litigation deters many from exercising that right is no reason to erect gratuitous roadblocks in the path of a litigant who finds a trail blazed by another." That the shared information might be detrimental to Domino's in other litigation does not transform the concern into good cause:

> Hooker also argues that the disclosure of information garnered through discovery will be detrimental to its position in parallel lawsuits. This is unquestionably true. However, this is not a reason for a court to impose a protective order. Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure.... Such cooperation among litigants promotes the speedy and inexpensive determination of every action as well as conservation of judicial resources.

*United States v. Hooker Chemicals & Plastics Corp.,* 90 F.R.D. 421, 426 (W.D.N.Y.1981) (citations omitted). Indeed, even Domino's might find itself spared additional rounds of disputes over what is discoverable. *See Carter–Wallace, Inc. v. Hartz Mountain Industries, Inc.,* 92 F.R.D. at 69–70.

■ The court recognizes that a different result is appropriate if litigation was commenced solely for purposes of engaging in discovery. *See Wilk v. American Medical Ass'n,* 635 F.2d at 1300–1301; *Patterson v. Ford Motor Co.,* 85 F.R.D. at 154; *In re Upjohn Antibiotic Cleocin Products Liability Litigation,* 81 F.R.D. 482 (E.D.Mich.1979), *aff'd,* 664 F.2d 114 (6th Cir.1981). This suit, brought by the survivors of a woman killed in a collision with one associated with Domino's, is not such a case. The court also recognizes that, for good or ill, requests for non-dissemination protective orders are becoming commonplace, *Ericson v. Ford Motor Co.,* 107

F.R.D. at 94, that such orders, if agreed to by the parties, may withstand challenge rather easily, *Scott v. Monsanto Co.,* 868 F.2d 786, 792 (5th Cir.1989) ("Even when based on a conclusory statement of cause, discovery orders by the trial court are rarely reversed for an abuse of discretion."); *In re Alexander Grant & Co. Litigation,* 629 F.Supp. 593 (S.D.Fla.1986) (agreed nondissemination protective order upheld on motion for reconsideration), and can be stringently enforced. *Kehm v. Procter & Gamble Mfg. Co.,* 724 F.2d 630 (8th Cir. 1984) (attorney ordered to pay adversary $10,000 in attorney fees for selling discovery materials to attorneys representing other plaintiffs in suits against defendant). Nonetheless, the court also recognizes Domino's obligation to make a particularized showing of good cause before the purposes of Rule 1 may be subjugated. Domino's has made so such showing.

As noted below, some items sought by the plaintiffs are entitled to qualification as propriety commercial information. Domino's seeks a more specific protective order as to those items, and the plaintiffs do not object to some such order. The plaintiffs do object, though, to Domino's proposal that the protective order allow Domino's to identify, before disclosure to the plaintiffs, items that Domino's claims to be confidential. The protective order set forth at the conclusion of this opinion includes a provision for judicial review of such claims and provides that fees may be awarded to the party prevailing with respect to such an objection.

Accordingly, the defendant's motion for a protective order is granted in part and denied in part. Dissemination will be prohibited only with respect to confidential proprietary information.

## II. MOTION TO COMPEL

The motion to compel response to the varied discovery requests remains.

### A. Requests for Production Directed to Domino's

■ The plaintiffs served a request for production on Domino's asking for forty-

one categories of items. Domino's objected generally that the requests seek proprietary and trade secret information and that they are vague, indefinite, overly broad, and unduly burdensome. Domino's agreed to produce copies of its franchise agreement with the Halvorsen defendants, its hiring policy, its 30–minute guarantee, and its safety manual subject to a protective order (Requests 1–4). Otherwise, Domino's objected that the information requested was irrelevant (Requests 4–7, 19, 23, 29), confidential (Requests 7–9, 32–34), or the subject of protective orders in other cases.

The objections are general, conclusory, and, for the most part, without apparent merit. Many of the irrelevancy objections are based on the propositions that Mr. Braden is an employee of franchisee Thomas Halvorsen rather than Domino's Pizza, Inc., and that he was returning from, rather than en route to, a delivery at the time of the accident. Domino's submits Mr. Braden's deposition to show that the franchisee employed, trained, and supervised him and that he was returning from a delivery at the time of the accident. Therefore, Domino's argues, the guarantee could not have affected Mr. Braden's driving.

Domino's objections and arguments ultimately may decide the merits of the case, but should not hamper discovery on the 30–minute guarantee. That Mr. Braden may have been returning from a delivery is relevant to, but not determinative of, whether the 30–minute guarantee affected his driving; it may be for the factfinder to determine whether he still was affected by the policy when returning. He may have driven recklessly on his return trip in order to make another delivery within the guaranteed time. As the plaintiffs argue, the objection that Mr. Braden was not making a delivery at the time of the accident shows that the discovery request is relevant, and it is reasonably calculated to lead to admissible evidence.

Few of the relevancy objections posed by Domino's meet the standard of *Schaap v. Executive Industries, Inc.*, 130 F.R.D. at 387. Although Domino's specifically details why it contends that the discovery requests are irrelevant, it does not show that there is no possibility that the discovery could lead to relevant information. To the contrary, as stated above, many of the arguments as to Mr. Braden's employment and activity bolster the argument that the discovery sought is relevant, as it bears on the effect of the 30–minute guarantee on Mr. Braden's driving.

■ Neither party elaborates on the confidentiality objections to discovery of commercial information. Without citing any authority or specifying the nature of the documents requested, Domino's claims that the corporation is privately owned and the information sought is confidential. Fed.R.Civ.P. 26(c)(7) allows the court to limit disclosure of commercial information. It is reasonable to limit disclosure of private corporate information, but the plaintiffs should be allowed discovery on the corporation's maintenance of the policy, as this goes to their theory.

While most of Domino's objections should be overruled for the reasons set forth above, some appear to have merit.

■ Request No. 11 seeks diagrams or statements in Domino's possession relating to the accident giving rise to this suit. Domino's objects that it requests attorney work product. The plaintiffs have neither shown nor attempted to show substantial need for this information pursuant to Fed. R.Civ.P. 26(b)(3).

■ Request No. 12 seeks all minutes of shareholders and directors meetings from October, 1984 to present. This request is overly broad and disclosure of this information may reveal confidential commercial information. During argument, plaintiffs' counsel represented that in this request he sought information relating to the 30–minute policy and to the amount of control Mr. Monaghan and Domino's exercise over the franchisees. This request, therefore, should be narrowed to those portions of the minutes reflecting discussions of the policy and the corporation's relationship with its franchisees.

■ Request No. 13 seeks all documents whereby any person or entity com-

mented on the danger of the 30–minute policy. This is vague, burdensome, and overly broad.

 Request No. 16 seeks all documents showing Domino's market share from the date of its incorporation to the present. This is unduly burdensome, overly broad, and does not appear to be reasonably calculated to lead to the discovery of admissible evidence.

 Request Nos. 29 and 30 request the minutes and notes of the meetings in which the 30–minute policy was discussed and adopted. Domino's claims these requests seek confidential information and are unduly burdensome. As with Request No. 12, the request for the minutes and notes in their entirety is overly broad. However, Domino's should produce those portions which reflect discussions of the 30–minute policy.

 Request No. 31 requests documents produced in two prior lawsuits involving delivery drivers' accidents. The documents produced in one case, *Kranack v. Domino's, Inc.*, No. 87–16335, in the Court of Common Pleas of Allegheny County, Pennsylvania, were the subject of a protective order forbidding their dissemination. Domino's also objects that the request seeks privileged information. The plaintiffs claim it would be less burdensome to produce documents already produced in the prior cases than it would be to generate new documents in this case. The principles set forth in Part I of this memorandum support the plaintiffs' position.

 Request No. 34 requests all corporate by-laws in effect any time from October, 1984 to the present, and No. 35 seeks all documents regarding Domino's sponsorship of race car teams. Domino's objects that this information is confidential and irrelevant and that the request is overly broad. In light of the issues articulated, these objections are well-taken. The court's imagination is too feeble to see how race car teams can produce anything more than an improper argument to the jury.

*B. Interrogatories Directed to Domino's*

The plaintiffs served twenty-two interrogatories on Domino's.

No. 1 requests the names, addresses, and telephone numbers of all persons known to Domino's to have knowledge of the facts of this case. Domino's refers to the officer's report and states that none of its employees witnessed the accident and it has no present knowledge of such persons. The assertion of lack of knowledge is troubling three weeks after the deadline for the completion of written discovery, but the court presumes Domino's awareness of its duty seasonably to supplement its responses pursuant to Fed.R.Civ.P. 26(e). Why the plaintiffs seek an order compelling discovery with respect to this interrogatory is not explained in the materials before the court.

No. 2 requests information on Domino's experts, and Domino's responds that it does not know its witnesses at this time. Again, the court presumes Domino's awareness of its duty seasonably to supplement its responses pursuant to Fed.R.Civ.P. 26(e). The materials before the court do not explain why the plaintiffs seek an order compelling discovery with respect to this interrogatory.

 No. 3 requests information as to other litigation arising from accidents involving delivery drivers. Domino's objects that the request is burdensome and not reasonably calculated to lead to discovery of admissible evidence, but, apart from simply asserting its non-liability in this case, Domino's has not suggested why this might be so. The request goes to the heart of the plaintiffs' theory.

 No. 4 seeks the identity of corporate officers and directors, and No. 15 requests the identity of all such persons from October, 1984 to present. No. 14 seeks the identity of the Corporate Executive Team members from October, 1984 to present. Domino's objects that only Mr. Monaghan is named as a defendant. However, this request may lead to discovery of admissible evidence, such as information relating to the corporation's maintenance of the policy.

■ No. 6(d) and (f) seek the amount of stock authorized and issued by Domino's and the par value thereof, and Domino's objects as to relevancy. Nos. 19 and 20 request the gross sales and total revenues of Domino's from 1981 to present. Domino's raises relevancy and confidentiality objections. If these requests are calculated to discover the corporation's net worth to determine punitive damages, par value may be a poor indicator of net worth, but that does not mean it should not be discovered.

Domino's could argue that discovery regarding its financial condition should be delayed until the plaintiffs recover punitive damages. *See John Does I–IV v. Yogi*, 110 F.R.D. 629. However, when a punitive damages claim has been asserted, the majority of federal courts permit pretrial discovery of the defendant's financial condition without requiring the plaintiff to establish a *prima facie* case on the issue of punitive damages.

> [T]he requirement that claimant establish a *prima facie* case applies to the admissibility of evidence about financial status, not its discoverability.... The discoverability of information is governed by whether it would be relevant, not by whether the information discovered would be admissible at trial.... To require a *prima facie* showing of entitlement to punitive damages at this time, before the completion of discovery, could also be quite difficult for the plaintiff and would not be logical since the very purpose of discovery is to locate evidence to support a punitive damages claim. Furthermore, to deny discovery of net worth until plaintiff can make a showing of a *prima facie* case at trial would only lead to delay and confusion while plaintiff reviews the information for the first time.

*Mid Continent Cabinetry v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D.Kan. 1990) (citations omitted) (collecting cases). If the interrogatories relate to the issue of punitive damages, they should be answered unless Domino's shows that they are confidential.

■ No. 8 asks if the corporation has ever furnished information bearing on its credit standing. While this could possibly go to the same issues as Nos. 6(d), 6(f), 19, and 20, this interrogatory is too far afield of those issues to be reasonably calculated to lead to admissible evidence.

■ Nos. 10 and 11 request the identity of the clergyman who contacted the plaintiffs at Domino's request, and Domino's objects because the interrogatory assumes that this occurred and objects on relevancy grounds. That no such event occurred would seem a better answer than objection. Domino's should respond with an identity or a denial.

■ No. 12 seeks information on corporate employees supervising various departments. Domino's objection as to relevancy because Mr. Braden was not Domino's employee should be overruled. These questions go to the plaintiffs' theory of liability premised on the corporation's reckless disregard for safety while maintaining the 30–minute guarantee. The question in No. 12(a) as to 1–800 telephone calls relates to a telephone number franchisees may call. This question should be answered to the extent possible. Producing this discovery will not hamper Domino's defense that the franchisee employed Mr. Braden.

■ Nos. 17 and 18 request the percentage of late deliveries from 1984 to present. Domino's again objects that this is irrelevant because this accident did not involve a late delivery. This goes to the merits of the case and not to discovery. It should be answered if possible. Domino's does not claim this request is unduly burdensome.

No. 21 asks whether Domino's has ever had a system for recording or analyzing delivery drivers' accidents. Domino's objects, but denies having such a system. Compelling a response would be as pointless as the objection.

■ No. 22 seeks the identity of any individual or entity owning more than 5% of the shares of the corporation. Domino's objects that the information is confidential and the request is burdensome, irrelevant,

and not calculated to lead to admissible evidence, and that only Mr. Monaghan is named as a defendant. Although the identity of officers and directors, who presumably would have some impact on the 30–minute policy, could lead to admissible evidence, this request is considerably further afield and seems almost certain not to produce admissible evidence.

#### C. Requests for Production Directed to Mr. Monaghan

■ Exhibit C to the plaintiffs' motion is a copy of the requests for production directed to Mr. Monaghan and the responses thereto. Requests (a) through (d) seek materials prepared in anticipation of litigation, and the plaintiffs have made no showing of substantial need as required by Fed. R.Civ.P. 26(b)(3). Domino's objects further that the requests are vague, irrelevant, argumentative, and overly broad, but the parties have demanded enough rulings; to say more than that Rule 26(b)(3) protects the information is unnecessary.

■ Request (e) seeks the identities of expert witnesses other than non-treating, consulting experts who are not to testify. Domino's poses the same objection as with the other requests, but it is unpersuasive. Fed.R.Civ.P. 26(b)(4)(A)(i) provides for discovery through interrogatories of the experts who are expected to testify.

■ Request (f) asks for a copy of *The Pizza Tiger*, a book by Mr. Monaghan. Domino's objects that it is irrelevant and the book is available for the plaintiffs to purchase a copy. The plaintiffs' affidavit states that the book is out of print and that they could not obtain it from local book stores despite their efforts. The plaintiffs have demonstrated their inability to obtain a copy, but have not demonstrated relevancy. This objection should be sustained.

#### D. Interrogatories Directed to Mr. Monaghan

The plaintiffs submitted three interrogatories to Mr. Monaghan. No. 1 asks the percentage of shares in Domino's owned by Mr. Monaghan, his family, or any entity owned or controlled by him or his family;

No. 2 requests the identities of the officers and directors of these entities; and No. 3 requests information on the holding company TISM.

■ Domino's objects that family members are not defendants. This objection may go to the liability of the family members or entities, but does not address their discoverability. Domino's also objects that this is irrelevant and confidential. The privacy of this type of information is more obvious than in the plaintiffs' other requests. Moreover, it appears that the discovery sought could not lead to admissible evidence, and the plaintiffs have not satisfied the court that this information is relevant to the issues set forth.

#### E. Requests for Admissions Directed to Mr. Monaghan

The plaintiffs sent a request for six admissions, to which Mr. Monaghan objected, stating that the requests were not relevant and that his financial matters were confidential.

■ Requests Nos. 1–4 seek admission that Mr. Monaghan or his family members own or control more than 90% of Domino's Pizza, Inc. As with the interrogatories directed to Mr. Monaghan, this request seeks information which is confidential and does not appear to be relevant or capable of leading to admissible evidence.

■ Request No. 5 requests admission that the 30–minute guarantee could not have been implemented without Mr. Monaghan's approval. Domino's again objects that at the time of the accident Mr. Braden was returning from a delivery and, therefore, this request is irrelevant.

■ Request No. 6 requests admission that Mr. Monaghan appointed P. David Black as President of Domino's, Inc. Domino's objects that Mr. Black is not a named defendant. This objection goes to Mr. Black's liability, not Mr. Monaghan's. The plaintiffs submit in Exhibit C to their response to the motion for a protective order a transcript of a congressional subcommittee hearing in which Mr. Black was asked

about the maintenance of the 30–minute policy in light of numerous accidents involving delivery drivers. Apparently, the plaintiffs seek discovery on the appointment of Mr. Black to show Mr. Monaghan's willingness to continue the policy despite its danger. Nos. 5 and 6 go to the issues articulated by the plaintiffs, and no objection to these requests is persuasive.

## III. ATTORNEY FEES

■ Rules 26(c) and 37(a)(4) of the Federal Rules of Civil Procedure provide that when a motion for protective order or a motion to compel is decided, the court shall assess costs, including attorney fees, against the losing party unless the losing party's position was substantially justified or other circumstances make such an award unjust. Here, the plaintiffs have prevailed on most of the issues pertaining to the protective order and the motion to compel. Nonetheless, the court declines to enter a fee award to the plaintiffs. In light of the plaintiffs' failure to propose an alternative protective order, and the plaintiffs' blanket request for an order compelling responses to interrogatories notwithstanding that some of the interrogatories had been answered, the court believes that an award of fees and costs would be unjust.

The court does not intend to imply a similar result in the event of future discovery requests. The court does not view its role as that of the proprietor of an Oriental rug bazaar, brokering discovery disputes through chambers discussions. *See Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 560, 565 (7th Cir.1984). Operation of Rules 26 through 37 of the Federal Rules of Civil Procedure should be self-executing through the cooperation of counsel; District Rule 13 underscores that approach. In the event of future discovery disputes, successful, narrowly drawn discovery motions, awards of fees and costs "shall" be made absent a showing of substantial justification for the opponent's position or other circumstances that make such an award unjust.

## IV. ORDER

Based on the foregoing:

A. The Domino's defendants' motion to strike is GRANTED IN PART AND DENIED IN PART. The motion is:

(1) GRANTED with respect to paragraph 6 of, and Exhibits I–L to, the plaintiffs' motion to compel; and

(2) DENIED with respect to Exhibits F and G of the plaintiffs' motion to compel.

B. The Domino's defendants' motion for a protective order is GRANTED IN PART AND DENIED IN PART. The motion is:

(1) DENIED as to any restrictions on dissemination by the plaintiffs of material not deemed proprietary information in paragraph E of this order; and

(2) GRANTED as to proprietary information as defined in paragraph E of this order.

C. The plaintiffs' motion to compel is GRANTED IN PART AND DENIED IN PART.

(1) The motion is GRANTED as to:

(a) all requests for production directed to Domino's Pizza, Inc. EXCEPT Nos. 11, 13, 16, 34, and 35;

(b) interrogatories Nos. 3, 4, 6(d), 6(f), 10–12, 14, 15, and 17–20 directed to Domino's Pizza, Inc.;

(c) requests for production Nos. 12, 29, and 30 directed to Domino's Pizza, Inc., to the extent such documents reflect discussion of the 30–minute policy and the defendant's relationship with its franchisees;

(d) request for production (e) directed to Thomas S. Monaghan; and

(e) requests for admissions Nos. 5 and 6 directed to Thomas S. Monaghan;

(2) The motion is DENIED as to:

(a) requests for production Nos. 11, 13, 16, 34, and 35 directed to Domino's Pizza, Inc.;

(b) interrogatories Nos. 8 and 22 directed to Domino's Pizza, Inc.;

(c) requests for production (a)—(d) and (f) directed to Thomas S. Monaghan;

(d) interrogatories Nos. 1–3 directed to Thomas S. Monaghan; and

(e) requests for admissions Nos. 1–4 directed to Thomas S. Monaghan.

D. The court declines to award fees and costs to either party pursuant to Fed. R.Civ.P. 26(c) and 37(a)(4), finding that the circumstances make an award of fees unjust.

E. The court enters the following protective order with respect to information to be disclosed by defendants Domino's Pizza, Inc. and Thomas S. Monaghan:

1. The disclosing defendants shall be permitted to restrict disclosure of any and all confidential proprietary information provided pursuant to any deposition or discovery request by the plaintiffs to the plaintiffs, their counsel, and their consulting experts and expert witnesses solely for the purposes of this litigation, by designating such information as "Confidential—Not to be Disclosed Outside This Litigation".

2. As used in this order, the term "Confidential—Not to be Disclosed Outside This Litigation" shall mean and refer to all documents and material containing confidential proprietary information, including but not limited to documents produced in discovery, depositions, deposition exhibits, any portion of the foregoing, and any information that is contained therein or produced in discovery and designated as being "Confidential—Not to be Disclosed Outside This Litigation" by the supplying party in accordance with this order. In designating information as "Confidential—Not to be Disclosed Outside This Litigation", the supplying party shall make such designation in good faith, and shall not so designate material simply because disclosure could be embarrassing to the supplying party, as distinct from affording a commercial advantage if known to competitors. Such material shall include all copies of documents, records and things designated as "Confidential—Not to be Disclosed Outside This Litigation", and all information contained in or otherwise derived from such documents, records or things.

3. Any document designated as "Confidential—Not to be Disclosed Outside This Litigation" shall be marked on the cover page with a stamp containing language substantially similar to the following: "CONFIDENTIAL—NOT TO BE DISCLOSED OUTSIDE THIS LITIGATION".

4. All "Confidential—Not to be Disclosed Outside This Litigation" matter shall be retained in the custody of counsel of record, who shall be responsible for restricting disclosure in accordance with the provisions of this order, and shall be disclosed only to the parties, their attorneys, and their consulting experts and expert witnesses solely for the purposes of this litigation.

5. In the event the plaintiffs object to a designation of material as confidential, the material shall be treated as so designated until this court rules to the contrary. The plaintiffs shall not be obligated to challenge the propriety of such a designation at the time made and failure to do so shall not preclude a subsequent challenge to the designation. The plaintiffs shall have the burden of moving the court to void the designation; the supplying defendant shall have the burden of satisfying the court of the need for nondissemination. The provisions of Rules 26(c) and 37(a)(4) of the Federal Rules of Civil Procedure shall apply to such proceedings objecting to the designation of material as confidential.

6. A supplying defendant may designate information disclosed at a deposition as "Confidential—Not to be Disclosed Outside This Litigation" by indicating on the record at the deposition that the testimony is "Confidential—Not to be Disclosed Outside This Litigation" and subject to the provisions of this protective order. Each court reporter participating in any such deposition shall be provided a copy of this order and shall adhere to its provisions. The designating party shall direct the court reporter to mark the designated portions of the transcript with the appropriate legend.

7. Any party may submit "Confidential—Not to be Disclosed Outside This

Litigation" matter to the court, or otherwise use or refer to such material in these proceedings. When such information is embodied in a document or in deposition testimony that is filed with this court, it shall be designated accordingly and shall be filed and maintained under seal by the clerk of the court. Such documents or transcripts of testimony shall be filed in the clerk's office in sealed envelopes on which will be endorsed the title and docket number of this action, an indication of the nature of the contents of such sealed envelope, and a statement substantially in the following form:

This envelope contains documents and/or testimony which have been filed by [name of party] and designated by counsel as confidential—not to be disclosed outside this litigation, and subject to the terms of a protective order of this court. It is not to be opened, nor the contents displayed or revealed, except by order of the court.

8. If the plaintiffs' attorneys shall hereafter desire to give, show, make available, or communicate designated documents, depositions or information contained therein in any way to any person other than those referred to in paragraphs 1 and 4 above, the attorneys shall designate those documents, depositions or information, identify the persons with whom they wish to communicate and inform the defendants' attorneys of their desire to communicate such documents, depositions or information. If counsel for the parties subsequently are unable to agree on the terms and conditions of disclosure to such persons, disclosure may be made only on such terms as the court may order.

9. The parties may modify the terms of this order by mutual written consent without prior approval of the court.

10. Within thirty (30) days after the satisfaction of judgment in this cause, all originals and reproductions of all documents subject to this protective order, except exhibits marked in depositions, and deposition transcripts and pleadings, shall be returned to the producing party.

The provisions of this protective order shall continue to be binding after the termination of this action.

SO ORDERED.