STATE of Iowa ex rel. Thomas J. MILLER, Attorney General of Iowa, and Iowa Board of Pharmacy Examiners, Appellants,

v.

NATIONAL DIETARY RESEARCH, INC.; Omicron International; J.P. Enterprises; William H. Morris, Individually and in his Corporate Capacity; and Mike Le Verso, Individually and in his Corporate Capacity; Appellees.

No. 89–1581.

Supreme Court of Iowa.

April 18, 1990.

Thomas J. Miller, Atty. Gen., and Ray Johnson and Cynthia A. Forsyth, Asst. Attys. Gen., Consumer Protection Div., for appellants.

Raymond Rosenberg and Daniel Jacobi of the Rosenberg Law Firm, Des Moines, for appellees National Dietary Research, Omicron Intern., Morris, and Le Verso.

Ann Fitzgibbons and Pamela Griebel of Scalise, Scism, Sandre & Uhl, Des Moines, for appellee J.P. Enterprises.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

In this interlocutory appeal the State complains about a discovery ruling in its suit against several defendants under the Iowa Consumer Fraud Act and the Iowa Drug and Cosmetic Act. We reverse and remand.

In August 1988 the State filed this action against National Dietary Research, Inc.,

Omicron International, J.P. Enterprises, William H. Morris, and Mike Le Verso. Under the consumer fraud theory, the State alleges that the defendants sold a diet pill in Iowa, using false or deceptive advertising. *See* Iowa Code § 714.16. And under the drug theory the State alleges the pill is a misbranded, unapproved new drug. *See* Iowa Code §§ 203A.2(13), 203A.10.

By the end of October, the State served interrogatories and requests for production of documents on all the defendants. *See* Iowa R.Civ.P. 126 and Iowa R.Civ.P. 129. By June 4 of the following year, all of the defendants (with the exception of Omicron, which has never answered the interrogatories or complied with the requests for production of documents) had responded to the discovery requests.

The defendants objected to many of the interrogatories and requests for production on several grounds: the discovery called for trade secrets; the discovery asked for legal conclusions and the work product of the defendants' attorneys; the State could use the information called for by the discovery to intimidate and harass customers.

On June 12 the defendants filed motions for a protective order. They asked the court to protect them from disclosing to the State confidential financial information and trade secrets.

On June 15 the State filed a motion to compel discovery. In the motion the State asked the court to compel the defendants to respond to the State's discovery requests. In particular the motion sought to require Omicron to file responses to all of the served discovery requests. The State also sought to require all the remaining defendants to respond to the interrogatories and requests for production to which they had objected.

On September 20 the district court issued an order on all pending motions. The court bifurcated the trial, ruling that the liability issues would be tried first, and the damage issues (if necessary) would be tried later. On appeal, the State does not challenge this part of the court's order.

The district court granted the defendants' motions for a protective order. But the court ordered the defendants to start accumulating customer and financial information for the damages stage of the trial in the event the State was successful on the liability issues.

Finally, the district court denied, with certain exceptions, the State's motion to compel. According to the exceptions, the defendants had to give the State copies of all advertising used in connection with the pill. The defendants also had to tell the State what type and amount of fiber was used in the pill and who, besides William H. Morris, was involved in the origin and development of the pill. Finally, the defendants had to give the State the names and addresses of all persons involved in creating the wording used in the ads.

By granting the defendants' motions for a protective order and denying in part the State's motion to compel, the district court prevented the State from discovering certain matters. These matters include customer information, the basis for representations made on the defendants' advertising, the identification of persons with knowledge of the relevant facts, and information about the suppliers and manufacturers of the defendants' diet pill. On appeal the State challenges those portions of the September 20 order that prevent discovery on these matters. In addition the State challenges the court's inclusion of Omicron in the protective order because Omicron never responded to the State's interrogatories or requests for production.

■ I. Because this case involves an appeal from the district court's ruling on discovery, our standard of review is abuse of discretion. *Agrivest Partnership v. Central Iowa Production Credit Ass'n,* 373 N.W.2d 479, 482 (Iowa 1985). We find such an abuse when the district court exercises its discretion "on grounds or for such reasons clearly untenable or to an extent clearly unreasonable." *Hubby v. State,* 331 N.W.2d 690, 697 (Iowa 1983).

■ II. In *Agrivest Partnership,* we expressed the philosophy undergirding our discovery rules: litigants are entitled to

every person's evidence, and the law favors full access to relevant information. To those ends we emphasized that the district court should liberally construe our discovery rules. 373 N.W.2d at 482.

Several avenues, however, are available to those who wish to resist discovery. These are included in Iowa Rule of Civil Procedure 122 (scope of discovery) and Iowa Rule of Civil Procedure 123 (protective orders).

Rule 122(a) provides:

*In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

■ Simply put, a party is entitled to information that is not privileged and that is relevant to the subject matter of the lawsuit. Relevancy to the subject matter of the lawsuit is broader than relevancy to the precise issues in the pleadings. This is so because inadmissible information is discoverable as long as it leads to the discovery of admissible evidence. So a party seeking to defeat discovery must show that the information sought is privileged or irrelevant. *Agrivest,* 373 N.W.2d at 482.

■ Rule 123 provides in pertinent part:

Upon motion by a party or by the person from whom discovery is sought or by any person who may be affected thereby, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression,

or undue burden or expense, including one or more of the following:

a. That the discovery not be had;

. . . .

g. That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;

. . . .

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. . . .

By its terms this rule authorizes the district court to prevent or restrict discovery when the information sought is a trade secret or other confidential information. The district court may do this even though the prerequisites of rule 122 are met.

We have interpreted rule 123 to authorize a protective order

when good cause is shown for finding that disclosure of a trade secret or other confidential information should be prevented or restricted to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense. . . ."

*Farnum v. G.D. Searle & Co.,* 339 N.W.2d 384, 389 (Iowa 1983). We, however, insisted on "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements in order to establish good cause." *Id.* In evaluating the factual showing we said the district court should use three criteria:

[T]he harm posed by dissemination must be substantial and serious; the restraining order must be narrowly drawn and precise; and there must be no alternative means of protecting the public interest which intrudes less directly on expression.

*Id.* at 389–90.

We recognized "these criteria strike a balance between the policy favoring discovery and free expression on one side and a party's interest in avoiding commercial damage and preventing an abuse of discovery on the other." *Id.* at 390.

III. Because the district court gave no reasons for the protective order, we do not know the basis for it. So we restrict our analysis to the substantive objections lodged by the defendants.

A. *Customer information.* The State served the following interrogatory on the defendants:

Identify each Iowa consumer who has made a purchase from National Dietary Research, Inc., Omicron International or J.P. Enterprises since January 1, 1984, and for each consumer so identified state:
a) what was purchased.
b) the total purchase price.
c) the date of purchase.
d) whether a refund was requested.
e) the date and amount of refund made, if any.

The district court denied the State access to the customer information. But the court did order the defendants to accumulate this information and have it available for production in the event the State prevailed on the liability issues. On appeal the defendants have apparently abandoned their position that the customer information is a trade secret. They now contend the information is irrelevant because of the district court's ruling bifurcating the trial.

In support of their contention the defendants argue that there are only two issues in the liability phase: whether the advertisements are deceptive and whether the pill is a drug or a new unapproved drug. Because the State need not prove that any customer was misled, the argument continues, the customer information is irrelevant.

A trade secret or confidential information within the meaning of rule 123 is information used in one's business, and which gives the person an opportunity to obtain an advantage over competitors who do not know or use it. *Farnum,* 339 N.W.2d at 389. Whether the information is a trade secret or confidential depends on the following factors:

(1) The extent to which the information is known outside of the party's business;

(2) The extent to which it is known by those involved in the party's business;

(3) The extent of measures taken by the party to guard the secrecy of the information;

(4) The value of the information to the party and to the party's competitors;

(5) The amount of effort or money expended by the party in developing the information;

(6) The ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.*

The defendants made no showing in the district court on any of these factors. It was their burden to do so. *See id.* at 389.

Nor did the defendants make any showing that the disclosure of the information should be prevented to protect them against annoyance, embarrassment, oppression, or undue burden or expense. They simply rested on their allegations and conclusions, which are not enough to establish good cause for the protective order.

Simply put, we fail to see any basis in the record to support the district court's protective order on the grounds the customer information is a trade secret or confidential within the meaning of rule 123.

For reasons that follow, we also think the customer information was relevant within the meaning of rule 122(a). It is true that the State need not prove that customers relied on the defendant's false or deceptive representations to prevail. *See* Iowa Code § 714.16(2)(a); *State v. Hydro Mag, Ltd.,* 436 N.W.2d 617, 621 (Iowa 1989). However, this fact alone does not mean that evidence which tends to show that consumers were misled by defendants' misrepresentations is irrelevant.

For example, the State can establish a prima facie case under its consumer fraud theory by showing that the defendants caused or authorized deceptive representations to be made in connection with the advertisement or sale of their pill. Iowa Code section 714.16(1)(g) defines deception as "an act or practice which has the tendency or capacity to mislead a substantial

number of consumers as to material fact or facts." Clearly under this provision, evidence that consumers were misled is relevant. *Cf. Linden v. United States,* 254 F.2d 560, 566 (4th Cir.1958) (evidence that customers were deceived was relevant in mail fraud case even though actual deception was not an element of the offense; such evidence was relevant on issue whether the defendants made deceptive solicitations).

Under its consumer fraud theory, the State alleged that the defendants made numerous deceptive, false or misleading representations to consumers. Some of these allegations include the following:

a. That a research scientist had recently confirmed that obesity can be controlled naturally with a new type of pill discovered by accident.

b. That in studies with potential cholesterol-lowering agents scientists noted that patients receiving an ingredient (now the pill in question) all lost weight in spite of being instructed not to alter normal eating patterns, while body weight in control groups remained constant.

The State also alleged that the defendants concealed material facts with intent that others would rely on them. For example, the State alleged the defendants concealed the fact that the pill can have side effects for some individuals, particularly those with existing health problems or those on medication. The State followed up with an allegation that the defendants' advertising had the capacity to mislead a substantial number of consumers as to material fact or facts.

As the State points out, consumers may all have suffered the same side effects after taking the pill. Or the evidence may show that none of the consumers lost any weight even though they took the pill as directed. Such evidence is clearly relevant not only as to the State's allegation of deception, but also as to defendants' basis for their advertising.

■ B. *Basis for representation made in the defendants' advertising.* In an interrogatory and in a request for production, the State sought the basis for the defendants' representations in their pill advertisements. The district court denied discovery of this information.

On appeal the defendants seek to uphold the court's ruling on three grounds. First, the information had already been supplied in previous discovery. Second, to the extent that the State sought more than facts, the court properly denied the discovery because the State was seeking the legal theories of counsel. Last, the protective order denying discovery as to this information was necessary to protect the defendants from annoyance, embarrassment, oppression, or undue burden or expense.

We see several flaws in the defendants' grounds. First, the district court never gave any of these as a reason for its ruling.

Second, defendants made no showing that they had provided *all* such information to the State. Nor did they make a showing that the protective order was necessary to protect them from annoyance, embarrassment, oppression, or undue burden or expense.

Third, although Iowa Rule of Civil Procedure 122(c) protects against disclosure of "mental impressions, conclusions, opinions, or legal theories" of counsel, the defendants made no showing that the basis for the defendants' representations fell within the rule. Again, the defendants rely solely on conclusory statements to support their position.

Last, we fail to see how such information constitutes more than bare facts, facts the State is entitled to have under our consumer fraud law, and facts which came into existence before this litigation ever began. As we said, the State has alleged that the defendants used deceptive advertising to sell their pill in violation of the consumer fraud law. Iowa Code section 714.16(2)(a) provides that advertisement is deceptive if there is no reasonable basis for the claim made in the advertising. This provision also puts the burden on the party making the representation to show that a reasonable basis for the claim exists. So the information the State seeks goes to the

heart of the State's case as well as to the defendants' obvious defense.

**C.** *Identification of persons with knowledge of the facts.* In one of its interrogatories, the State asked the defendants to identify persons with knowledge concerning the origination, development or marketing of the pill, or who have knowledge of any of the facts relating to the issues in the litigation. In response, the defendants only listed William Morris, chief executive officer of National Dietary Research, Inc., and James and Pat Penrode.

The State moved to compel the defendants to answer the interrogatory because the information given was incomplete. The district court denied the request.

On appeal the defendants contend the interrogatory was answered.

By its terms rule 122(a) provides that the identity of persons having particular, relevant facts is discoverable. We have no way of knowing whether the interrogatory was answered completely.

On remand, the State should be allowed to pursue all available means of discovery to determine whether the defendants know of any other persons who have knowledge of the relevant facts. If the State establishes that the defendants have been evasive, we trust the district court will render appropriate sanctions against them.

**D.** *Information about the supplier and manufacturer of the pill.* Finally, the State served the following interrogatory on the defendants:

Identify all suppliers and manufacturers of each of National Dietary Research, Inc., Omicron International or J.P. Enterprises' products and state the price paid by said company for each product or for raw materials. If said company manufactures any of its products in whole or in part, state the price paid for the raw materials and state specifically what the company does to the product to put the product in the form in which the product is sold.

In a request for production the State also asked for all contracts and correspondence with such suppliers and manufacturers.

The defendants objected to the interrogatory and request for production on the grounds the information sought was a trade secret and not relevant.

The district court denied the State's motion to compel defendants to answer the interrogatory and produce the documents.

On appeal the defendants only urge that the information was irrelevant. We agree with the State that the contents of the pill are an important issue in this case. One of the representations the State alleges the defendants made to consumers is that the pill contains all natural ingredients. Suppliers and manufacturers are in a position to supply this information which is clearly relevant on these issues.

**IV.** The State's final complaint is that the district court incorrectly included Omicron in its protective order. The State points out that Omicron has never answered nor objected to the State's interrogatories or request for production. So, the State argues, the protective order should not have covered Omicron. We agree.

Iowa Rule of Civil Procedure 126(a) requires a party to answer interrogatories unless the party objects to them. A party's "failure to comply with this rule shall be deemed a failure to answer and shall be subject to sanctions as provided in RCP 134." Iowa R.Civ.P. 126(a). Answers and objections to interrogatories must be filed "within thirty days after they are served; except that a defendant may file answers or objections within sixty days after service of the original notice upon that defendant." Iowa R.Civ.P. 126(a).

Omicron neither answered the interrogatories nor objected to them. Under the rule they had a duty to do so. The district court should not have shielded this defendant from responding to the State's discovery request by including it in its protective order.

On remand, the State should be allowed to renew its motion to compel Omicron to respond to its discovery request. We trust the district court will consider that motion in light of Omicron's duty to respond to the

interrogatories and requests for production.

V. In summary, we conclude the district court abused its discretion by denying the State discovery of information that was clearly discoverable within the meaning of rule 122 and was not subject to a protective order within the meaning of rule 123. The district court provided no reasonable basis for denying the State such information, nor does such a basis appear in the record.

The district court also abused its discretion by including Omicron in its protective order when this defendant made no response to the State's discovery requests.

We reverse and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.