MEDIACOM IOWA, L.L.C., Appellant,

v.

INCORPORATED CITY OF SPENCER, Iowa, and The Board of Trustees of The Spencer Municipal Utilities, Appellees.

No. 02–0554.

Supreme Court of Iowa.

June 16, 2004.

Mark McCormick and Margaret C. Callahan of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, Harold W. White of Fitzgibbons Law Firm, Estherville, and R. Bruce Beckner of Fleischman and Walsh, L.L.P., Washington, D.C., for appellant.

Stephen F. Avery of Cornwall, Avery, Bjornstad & Scott, Spencer, Dick H. Montgomery, Spencer, and Ivan T. Webber of Ahlers & Cooney, P.C., Des Moines, for appellees.

LAVORATO, Chief Justice.

In this declaratory judgment proceeding, we granted a cable company interlocutory review of a district court order that partially denied the company's motion to compel discovery. The cable company sued a city and its utilities board for its actions in establishing a competing communications system. The company contends the district court abused its discretion in protecting from discovery information the court concluded constituted trade secrets. We agree and reverse and remand the case for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

Mediacom Iowa, L.L.C. (Mediacom) has a franchise from the city of Spencer (city) to provide cable television and Internet service. Mediacom brought this declaratory judgment action against the city and the Board of Trustees of Spencer Municipal Utilities (Board). The petition alleges the following facts.

The action was brought to end the ultra vires actions of the city and the Board to implement the city's and the Board's decision to use up to $16 million of electric ratepayer funds to finance the construction and operation of an integrated, multi-purpose communications system in Spencer.

The financing has been done in two principal transactions, referred to as the Interfund Loan. In the first transaction, $8 million of electric service revenues have been pledged to pay debt incurred to build part of the communications system. In the second transaction, up to $8 million of electric utility funds have or will be transferred outright to pay for the construction and operation of the communications system.

The city has allowed the Spencer Municipal Utilities (SMU) to construct a communications system to provide cable television service without requiring SMU to have a franchise or imposing upon it regulatory burdens comparable to those borne by Mediacom. These actions undermine the financial integrity of SMU, violate Iowa statutory prohibitions, and force captive SMU ratepayers to become involuntary supporters of the city's communications system. Moreover, the city's actions are also unfair to Mediacom, subjecting it to competition from an entity that is financed with money illegally raided from SMU's ratepayers and imposing costs and obligations on Mediacom that are not also imposed on the city's communications system.

Among other things, the petition seeks temporary and permanent injunctive relief concerning the construction and operation of the communications system and the financing of the construction, operation, and maintenance of the system.

Following the filing of the petition, Mediacom served on the Board a request for production of documents. The Board objected to eleven of Mediacom's document requests on the grounds of trade secrets under Iowa Code section 22.7(3) (Supp. 2001) (providing that trade secrets are confidential for purposes of the open records law) and under Iowa Code section 388.9(2) (2001) (providing competitive in-formation of city utility shall not be examined). The Board also objected to five of the eleven requests on the grounds of attorney-client privilege.

The eleven requests sought information concerning the communications system and more specifically design and construction documents, feasibility studies relating to the economic viability of a communications system, planned use and installation of control boxes, Board minutes, documents analyzing the financial consequences and risks of the Interfund Loan, disposition of electric utility surplus to fund the Interfund Loan, construction and operation financing, budget forecasts, leases, cost or expense allocation relating to terminal or interface box installation, and financial information regarding the effect on rates charged by SMU from failure of the communications system to repay amounts owed to SMU.

After unsuccessful attempts to informally settle a discovery dispute that arose because of the requests, Mediacom filed a motion to compel discovery. Following a hearing at which no evidence was presented, the district court sustained the motion in part and overruled the motion in part. Regarding the claim of attorney-client privilege, the court ordered the Board to produce a privilege log regarding five of the eleven requests. However, the court overruled the motion as to all eleven requests, finding that the information sought constituted trade secrets and for that reason were entitled to protection from discovery.

Mediacom sought interlocutory appeal, which we granted.

## II. Issues.

On appeal, Mediacom contends the district court's findings of fact as to the existence of trade secrets lack support in the

record. Mediacom also contends the district court applied the wrong standard by granting absolute protection to the alleged trade secrets.

The Board contends the district court was correct in protecting the information sought through discovery under both Iowa Code section 22.7(3) (Supp.2001) and Iowa Code section 388.9(2) (2001).

### III. Scope of Review.

■ We review a district court's ruling on a discovery matter for abuse of discretion. *State ex. rel. Miller v. Nat'l Dietary Research, Inc.,* 454 N.W.2d 820, 822 (Iowa 1990). There is such an abuse when the grounds underlying a district court order are clearly untenable or unreasonable. *Id.* "A ruling based on an erroneous interpretation of a discovery rule can constitute an abuse of discretion." *Shook v. City of Davenport,* 497 N.W.2d 883, 885 (Iowa 1993).

### IV. Analysis.

■ We begin our analysis by noting the philosophy underlying our discovery rules is that "litigants are entitled to every person's evidence, and the law favors full access to relevant information." *Nat'l Dietary,* 454 N.W.2d at 822–23. Thus, the district court should liberally construe our discovery rules. *Id.* at 823.

However, there are several avenues available to those who wish to resist discovery. *Id.* Such avenues are included in Iowa Rule of Civil Procedure 1.503 (scope of discovery) and Iowa Rule of Civil Procedure 1.504 (protective orders). *Id.*

Rule 1.503, relating to scope of discovery, provides:

Unless otherwise limited by order of the court in accordance with the rules in this chapter, the scope of discovery is as follows:

1.503(1) *In general.* Parties may obtain discovery regarding *any matter, not privileged,* which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

(Emphasis added.)

■ As this rule makes clear, a party is entitled to discover any information that is not privileged and that is relevant to the subject matter of the lawsuit. *Nat'l Dietary,* 454 N.W.2d at 823. Relevancy to the subject matter of the lawsuit is broader than relevancy to the precise issues in the pleadings because the rule allows discovery of inadmissible information as long as it leads to the discovery of admissible evidence. *Id.*

■ In this connection, the court has recognized that there is no true privilege against discovery of trade secrets or other confidential information. *Roberts v. De-Kalb Agric. Assoc., Inc.,* 259 Iowa 131, 140, 143 N.W.2d 338, 343 (1966). And a party resisting discovery by invoking a privilege has the burden to show that the privilege exists and applies. *Hutchinson v. Smith Labs., Inc.,* 392 N.W.2d 139, 141 (Iowa 1986): The court has also recognized that a trade secret must and should be disclosed if the disclosure is relevant and necessary to the proper presentation of a plaintiff's or defendant's case. *Roberts,* 259 Iowa at 140, 143 N.W.2d at 343. The catch is to secure the right of one litigant to get relevant and necessary information

and to protect the other litigant from disclosing secrets which are not relevant and necessary, especially where the action is between competitors. *Id.* To this end, rule 1.504, regarding protective orders, comes into play.

Rule 1.504(1) pertinently provides:

Upon motion by a party or by the person from whom discovery is sought or by any person who may be affected thereby, and for good cause shown, the court in which the action is pending . . .

*a.* May make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) That the discovery not be had.

(2) That the discovery may be had only on specified terms and conditions. . . .

. . . .

(7) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way.

■ By its terms, rule 1.504(1) allows the district court to prevent or restrict discovery when the information sought is a trade secret or other confidential information. The district court may prevent or restrict such discovery even though the requirements of rule 1.503(1) are met. *Nat'l Dietary*, 454 N.W.2d at 823.

This court has interpreted rule 1.504(1) to allow the district court to issue a protective order to prevent or restrict such discovery "when good cause is shown for finding that disclosure of a trade secret or other confidential information should be prevented or restricted to protect a party 'from annoyance, embarrassment, oppression, or undue burden or expense. . . .' " *Farnum v. G.D. Searle & Co.*, 339 N.W.2d

384, 389 (Iowa 1983) (citing Iowa R. Civ. P. 1.504(1)(*a*)).

■ Before the district court may issue a protective order regarding a trade secret or other confidential information, it must first determine that the information constitutes a trade secret or other confidential information. *Id.*

■ Iowa Code section 550.2(4) defines trade secrets:

*"Trade secret"* means information, including but not limited to a formula, pattern, compilation, program, device, method, technique, or process that is both of the following:

*a.* Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by a person able to obtain economic value from its disclosure or use.

*b.* Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Iowa Code § 550.2(4) (2001). Whether this definition is satisfied is a mixed question of law and fact. *Econ. Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641, 648 (Iowa 1995). The legal determination is whether the material sought is "information." *Id.* The factual determination is whether (*a*) and (*b*) of section 550.2(4) are satisfied. *Id.* at 648–49. A district court ruling denying access to trade secrets must be reversed for abuse of discretion when the party resisting production makes no showing on the latter two factors. *Nat'l Dietary*, 454 N.W.2d at 824.

■ Once having made the determination that the information sought is a trade secret or other confidential information, the district court must then determine whether good cause has been shown for the protective order. *Farnum*, 339

N.W.2d at 389. To establish good cause, a party seeking the protective order must make "'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusionary statements.'" *Id.* (citation omitted). In evaluating the factual showing, the district court should employ three criteria:

"[T]he harm posed by dissemination must be substantial and serious; the restraining order must be narrowly drawn and precise; and there must be no alternative means of protecting the public interest which intrudes less directly on expression."

*Id.* at 389–90 (quoting *In re Halkin*, 598 F.2d 176, 191 (D.C.Cir.1979)). These criteria, we said, "strike a balance between the policy favoring discovery and free expression on one side and a party's interest in avoiding commercial damage and preventing an abuse of discovery on the other." *Id.* at 390.

■ Here, the district court merely found that the document requests to which the Board objected were trade secrets and denied Mediacom's motion to compel without further findings or analysis. The Board presented no evidence, and the district court made no factual determinations on the two factual questions that must be satisfied on the question whether information constitutes a trade secret. As to the first factual determination, the district court's ruling merely concludes, "all of these items also have economic value not being readily ascertainable to a competitor, who could obtain value from their use...." The district court cites no facts to support this conclusion. The Board, the party claiming the privilege of trade secret, had the burden to prove the information sought met this prong of the trade secret definition.

As to the second factual determination, the ruling again merely concludes, "all of these items ... are the subject of reasonable efforts at secrecy." Again, the Board offered no proof of any efforts it took to keep the information secret, and for that reason the district court had no factual basis to support its conclusion.

Moreover, the district court did not apply the three-part *Farnum* test to restrict or prevent discovery. The court upon finding the information sought constituted trade secrets protected the information absolutely from discovery.

Because the district court made no factual findings regarding whether the information sought constituted trade secrets and failed to apply the three-part *Farnum* test, we conclude it abused its discretion in denying the motion to compel. *See State of Iowa ex. rel. Miller v. Publishers Clearing House, Inc.*, 633 N.W.2d 732, 739–40 (Iowa 2001) (holding protective order on trade secret grounds that merely tracked language of statute, without particularized findings, was insufficient to support trade secret claim, and court failed to apply the required three-part test for protective order; court's protective order on trade secret ground was therefore abuse of discretion).

The Board cites Iowa Code chapter 22, the open records law, to support the district court ruling. Although the district court made no reference to Iowa Code chapter 22, we infer from its ruling that it was indeed relying on that chapter, and more specifically Iowa Code section 22.7 (Supp.2001). Section 22.7 provides in relevant part:

The following public records shall be kept confidential, *unless otherwise ordered by a court*, by the lawful custodian of the records, or by another person duly authorized to release such information:

. . . .

3. Trade secrets which are recognized and protected as such by law.

(Emphasis added.)

██ Even assuming the Board had established its trade secret claim, section 22.7 would not automatically dictate absolute protection of the information sought through discovery. Iowa Code chapter 22 pertains to parties seeking access to government documents and ordinarily has no application to discovery of such information in litigation. Mediacom is not seeking access to government documents as a member of the general public; it is seeking access to such records as a plaintiff in litigation with a governmental entity. As a litigant, the Board is subject to our discovery rules, which do not absolutely protect trade secrets from discovery. We agree with Mediacom that there is nothing in section 22.7 that suggests the legislature intended to limit the discovery rights of litigants in cases involving governmental entities. To the contrary, section 22.7 indicates the opposite because it allows disclosure upon a court order. We conclude, contrary to the district court, that section 22.7 does not trump our discovery rules.

██ The Board also relies on Iowa Code section 388.9(2) (2001) to support the district court ruling. Although the Board raised this statute in resisting the motion to compel, the district court made no reference to it. Nor can we infer from its ruling that the court relied on this statute. Nevertheless, we may consider the argument. *See DeVoss v. State*, 648 N.W.2d 56, 61 (Iowa 2002) (district court ruling may be upheld on a ground other than the one upon which the district court relied provided the ground was urged in the district court).

Section 388.9(2) provides in relevant part:

Notwithstanding section 22.2, subsection 1 [granting every person right to examine and copy a public record], public records of a city utility ... which shall not be examined or copied as of right, include proprietary information, records of customer names and accounts, records associated with marketing or pricing strategies, preliminary working papers, spreadsheet scenarios, and cost data, if the competitive position of the city utility ... would be harmed by public disclosure not required of a potential or actual competitor, and if no public purpose would be served by such disclosure.

Similar to Iowa Code section 22.7, section 388.9(2) merely addresses the question of whether the cited records are open to general public inspection and has no language suggesting that it applies to litigation involving a city utility. We see nothing in the statute's language that would exempt a city utility litigant from our discovery rules regarding the information listed in the statute.

In addition, the district court made no findings regarding whether the information sought includes the information in section 388.9(2). Moreover, the Board produced no evidence that the competitive position of the city utility would be harmed by public disclosure and that no public purpose would be served by such disclosure.

For all of these reasons, we conclude section 388.9(2) cannot save the district court's ruling from reversal for abuse of discretion.

## V. Disposition.

Because we conclude the district court abused its discretion in overruling Mediacom's motion to compel on trade secret grounds, we reverse and remand the case

for further proceedings consistent with this opinion.

**REVERSED AND CASE REMAND-ED.**